IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SANDRA FRIERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-1300-CV-W-ODS |
| ) | |
| SBC GLOBAL SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION GRANTING
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendant's Motion for Summary Judgment (Doc. # 41). The Motion is granted.

I. BACKGROUND[1]

Defendant, SBC Global Services ("SBC"), among other things, installs and maintains communication and data systems for businesses. Defendant's Statement of Uncontroverted Facts ("DSOF"), ¶ 1. Plaintiff, Sandra Frierson ("Frierson"), began working for SBC on May 4, 1998. DSOF, ¶ 3.

In January 2009, Frierson became a manager of network services (also referred to as field service manager), which involved managing technicians who installed and maintained electronic telecommunications equipment. DSOF, ¶ 5. In 2009 and early 2010, Frierson worked with another manager of network services, Larry Kinder. DSOF, ¶ 7. Before Frierson was a manager of network services, Kinder supervised two crews of technicians; the "on-site" crew and the "demand" crew. DSOF, ¶ 8. Once Frierson started, she supervised the on-site crew and Kinder continued supervising the demand

---

[1] The facts of the case are derived from both Parties' statement of facts which are uncontroverted unless otherwise indicated. For the facts that have been controverted, they are viewed in the light most favorable to Frierson, the non-moving party. Immaterial facts have been omitted.

crew.  DSOF, ¶ 8.

In December 2009, Frierson and Kinder began reporting to Gregg Oliver ("Oliver"). DSOF, ¶ 11.  On February 2, 2010, Frierson made an internal complaint about Kinder that he shouted at her and cornered her in an evaluator.  DSOF, ¶ 12.  After an investigation into the matter, Oliver terminated Kinder on April 5, 2010, for violating SBC's Code of Conduct provisions prohibiting workplace violence.  DSOF, ¶ 18.

After Kinder's termination, Frierson temporarily supervised both the on-site and demand crew.  DSOF, ¶ 21.  In June 2010, Jackie Oswald ("Oswald") was hired as a manager of network services.  DSOF, ¶ 22.  Oswald previously worked at SBC from 1989 to 2009 and had worked as an engineer.  DSOF, ¶ 23.  After Oswald started, Frierson supervised only the demand crew.  DSOF, ¶ 25.  Frierson advised Oliver that if the new manager was an engineer, it would "work in St. Luke's favor" and that the customer contact and his boss "were never pleased with me replacing the previous on-site manager . . . who use [sic] to be a technician . . . ."  DSOF, ¶ 27.  Frierson made several recommendations on how to split up the technicians, including a "final recommendation" that she and Oliver "agreed on."  DSOF, ¶ 28.[2]  Frierson's "agreed on" recommendation stated that Frierson should supervise 11 technicians and Oswald should supervise 9 technicians.  Doc. # 41-2, Pl's Ex. F-2.  Frierson was ultimately given more technicians than she initially requested.  Doc. # 4, Pl's Ex. F-2.  One of the best technicians was moved to Oswald's team, but was loaned to Frierson's when needed.  DSOF, ¶ 58.

Frierson's job performance was evaluated regularly.  On her 2009 end-of-year review, Frierson received "far exceeds goals," which was the top rating.  Pl's Ex. B, Oliver Dep. (Doc. # 38-3), 132:16-19; 159:8-14.  On her mid-year 2010 review, she was rated "meets most, not all goals."  DSOF, ¶ 29.  After the evaluation, Frierson informed Oliver that she wanted to look for another position.  DSOF, ¶ 29.  Oliver told Frierson, "Sandra, I don't want you to go anywhere.  I want you to stick it out here."  DSOF, ¶ 30.

---

[2] Frierson purports to dispute this fact, but Frierson's own testimony and e-mails shows that it remains undisputed.  Def's Ex. 5, Frierson Dep. at 37:4 – 39:17.

Nonetheless, Frierson looked "a little" for another position.  However, she never applied for another job and did not tell Oliver any specific job she was interested in.  DSOF, ¶ 61.  Frierson acknowledges she cannot identify a single job within SBC that Oliver kept her from obtaining. DSOF, ¶ 62.

Oliver's evaluation of Frierson's performance at the end of 2010 and rated her "meets most, not all goals."  DSOF, ¶ 37.  Oliver also rated Oswald at the end of 2010, as "meets and may exceed some goals," which was one notch higher than Frierson's rating.  DSOF, ¶ 38.  Frierson did not disagree with her 2009 appraisal.  When asked if there was anything in the 2010 appraisal that she disagreed with she answered, "No. This is what was given to me."  Doc. 34-5, Frierson Dep. at 161:2-25.

On February 11, 2011, Oliver was notified by Human Resources that because of a management surplus, there was an opportunity to reduce the force in his business area beginning in May 2011.  DSOF, ¶ 41.  Oliver believed it was appropriate to reduce his headcount because technicians had left, revenue was down, and productivity numbers were down.  DSOF, ¶ 41.[3]  Oliver decided to eliminate one of the two managers of network services.  PSOF, ¶ 34.  Oliver was not instructed by SBC to eliminate a position; rather, he elected to do so.  PSOF, ¶ 37.

In May 2011, after approval of the business plan reducing the surplus, Oliver was asked to rank Frierson and Oswald in four areas—performance, leadership, skills, and experience.  DSOF, ¶ 46.  Oliver ranked Oswald slightly higher than Frierson in performance, leadership, and skills.  DSOF, ¶ 47.  Based on the evaluation, Frierson's position was eliminated.  DSOF, ¶ 49.[4]  Frierson agrees that Oswald had better technical skills due to Oswald's engineering background.  DSOF, ¶ 72.

On May 26, 2011, Oliver notified Frierson that her position had been eliminated. Pl's Response to DSOF, ¶ 50.  Frierson's former position at SBC has never been filled;

---

[3] Frierson attempts to controvert this fact but offers no evidence to dispute it.
[4] Frierson disputes that Oliver was told by Human Resources that her position would be eliminated.  Pl's Response to DSOF, ¶ 49.  However, SBC does not dispute that Oliver decided to terminate Frierson's employment based on her relative performance.  Whether it was Oliver or Human Resources, the identity of the decision maker is immaterial.

3

instead, her former duties were absorbed by Oswald and other management members. DSOF, ¶ 52. Two other managers for SBC in other cities also lost their jobs as part of the surplus, but Frierson presents no evidence that they were terminated for any reason other than eliminating a surplus. DSOF, ¶ 51; Pl's Response to DSOF, ¶ 51.

One final issue is whether Frierson was deprived of resources after she made a complaint about Kinder. Frierson offers the following to dispute many of SBC's uncontroverted facts and to substantiate her assertion that she was "sabotaged":

> Frierson also believes the 2010 review was one of the "building blocks" in her ultimate termination. Further, Frierson testified she believed that Oliver's denial of her request to look for other jobs within the company after her 2010 mid-year evaluation was in retaliation for her complaint about Kinder. Additionally, Frierson specifically testified that Oliver started doing different things so that she would not be successful in her job and that she was being set up to fail after she complained about Kinder—i.e. taking her resources away and moving them into Oswald's team—and that she expressed those concerns to Oliver. After the reallocation, Frierson felt she was left with a "skeleton crew."

Pl's Response to DSOF, ¶ 59 (citations omitted); *see also* PSOF, ¶ 20-22, 25-26, 32. The Record is void of any evidence supporting Frierson's allegations. Frierson does not point to any support from the Record, and the Court is unable to find any.

Frierson's Amended Complaint contains two counts: (1) Count I—Retaliation in Violation of the Missouri Human Rights Act ("MHRA"); and (2) Count II—Retaliation in Violation of 42 U.S.C. § 1981. The Court now considers SBC's Motion.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

4

properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotations omitted). In applying this standard, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, on which that party will bear the burden of proof at trial." *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999).

For employment discrimination cases, the same summary judgment standard for any other case sitting in federal court is applied.[5] *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). "[D]istrict courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Id.*

### III. DISCUSSION

SBC moves for summary judgment on Frierson's retaliation claims under the MHRA (Count I) and 28 U.S.C. § 1981 (Count II). The Court will separately analyze each claim because each requires different standards. *See Wierman*, 638 F.3d at 1002 ("The Supreme Court of Missouri has stated that the MHRA's 'safeguards are not identical to

---

[5] The Parties disagree whether to apply Missouri or federal law in deciding summary judgment motions. The Court will apply state law for substantive issues and federal law for procedural issues.

5

the federal standards and can offer greater discrimination protection.'" (quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-19 (Mo. 2007) (en banc))).

A. Count I: Retaliation under MHRA

To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1) she complained of discrimination; (2) the employer took adverse action against her; and (3) a causal relationship existed between the complaint and the adverse action.[6] *McCrainey v. Kansas City Missouri School Dist.*, 337 S.W.3d 746, 753 (Mo. App. W.D. 2011). A plaintiff proceeding on a MHRA retaliation claim must prove that her opposition to unlawful discrimination was a "contributing factor" in her employer's adverse employment action. *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011) (citing *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 360 (8th Cir. 2009) (citing *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 665 (Mo. 2009))). A "contributing factor" is one that contributes a share in anything or has a part in producing the effect. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. App. 2009).

1. Adverse Employment Action

There is no dispute that Frierson suffered an adverse employment action.[7] Both parties acknowledge that Frierson's employment was terminated on July 25, 2011. However, Frierson does not believe that this was the only adverse action that occurred. Specifically, Frierson asserts that: (1) she "believes" Oliver started doing "things" differently, such as taking her resources away and moving them into Oswald's team; (2) Oliver reallocated technicians and left Frierson with what she "felt" was a "skeleton crew";

---

[6] "Missouri has rejected federal burden-shifting rules for employment discrimination claims . . . ." *Hilfiker v. Gideon Sch. Dist. #37*, No. SD-31679, 2012 WL 5505920 (Mo. Ct. App. Nov. 14, 2012) (citing *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664-65 (Mo. 2009) (en banc) and *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-20 (Mo. 2007) (en banc)).

[7] For the purpose of its motion for summary judgment, SBC does not challenge that Frierson made a complaint about Kinder in February 2010.

(3) she "believes" Oliver's purported denial of her request to look for other jobs was retaliation for her complaint about Kinder. Pl's Br. at 47. Frierson's allegations do not establish an adverse employment action. First, there is no evidence to support Frierson's beliefs. *See Gibson*, 670 F.3d 844, 857 (8th Cir. 2012) ("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact."). The Record shows Oliver did not take Frierson's resources away. Frierson was given more technicians than she initially requested and one of the better technician's in Frierson's view was loaned to her crew when needed. Frierson also made the recommendation on how to split up the on-site and demand crew.

Second, even if Frierson could substantiate that these actions occurred, they are not adverse employment actions. *See Shockensey v. Ramsey County,* 493 F.3d 941, 950 (8th Cir. 2007) (stating that adverse employment actions include demotions, suspensions, and terminations, but not general hostility). Accordingly, the only adverse employment action Frierson suffered was her employment termination. *Wierman*, 638 F.3d at 999 ("Unquestionably, termination is an adverse employment action.").

## 2. Causal Relationship/Contributing Factor

SBC argues there is no causal relationship between Frierson's complaint about Kinder and her termination. Frierson presents the following unsubstantiated allegations: Frierson's 2010 review was a "building block" in her termination; she "believed" that Oliver's refusal to allow her to look for other jobs was retaliation; Oliver started doing different "things" so that she would not be successful; Frierson was set up to fail; Oliver took her resources away and moved them to Oswald's team; and Frierson was left with a "skeleton crew." Frierson's self-serving statements about how she "felt" or what she "believed" fails to create a factual basis to support a jury verdict in her favor. At best, her belief could only invite the jury to substitute its business judgment for SBC's. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) (quoting *Wilking v.*

7

*County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)). There is no evidence that Frierson was deprived of critical personnel or other resources in retaliation of her complaint about Kinder. Instead, the Record shows that Frierson was given more technicians than she initially requested, that one of the better technicians was loaned to her when needed, and that Frierson actually made the recommendation on how to split up the on-site and demand crews. Additionally, the Record shows that after Frierson's mid-year 2010 evaluation, Oliver told Frierson he wanted her to "stick it out" and not look for another position within the company. The Record also shows Frierson never applied for another job, nor did she tell Oliver a specific job in which she was interested.

The Court further finds no evidence to establish a causal connection between her complaint about Kinder and her termination. Fifteen months elapsed between the date Frierson made her complaint and the date SBC terminated Frierson. Thus, there is no temporal connection that supports Frierson's retaliation claim. *See Reico v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (holding that six month lapse was insufficient to show causation); *Lewis v. Saint Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim, and that a two-week interval was 'sufficient, but barely so.'") (internal citations omitted)*; Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (stating that with a ten month delay, "any causal nexus inference tends to evaporate"); *Reyna v. Barnes & Noble Booksellers*, No. 08-00369-CV-W-DGK, 2009 WL 929135 (W.D. Mo. April 3, 2009) (finding no temporal connection when plaintiff's first complaint was in November 2005 and his termination was in December 2006).

Finally, there is no evidence that Frierson's complaint about Kinder was a contributing factor in her termination. Instead, the Record shows that Frierson was terminated as a result of a management surplus and because her job performance compared unfavorably to Oswald's. Oliver ranked Oswald higher than Frierson in performance, leadership, and skills. Frierson acknowledges that Oswald had better technical skills than due to her engineering background. Frierson failed to establish a prima facie case of retaliation under the MHRA. Accordingly, the Court grants SBC's

8

Motion for Summary Judgment on Count I of Frierson's Amended Complaint.

B. Count II: Retaliation in Violation of 42 U.S.C. § 1981

Count II of Frierson's Amended Complaint alleges retaliatory discharge under 42 U.S.C. § 1981, based on the same facts as her MHRA claim. Frierson fails to meet the more relaxed standard under her MHRA claim, and it follows that her Section 1981 claim also fails.

The elements of a prima facie case of retaliation under Section 1981 are: (1) plaintiff engaged in statutorily protected activity; (2) an adverse employment action was taken against her; (3) a causal connection exists between the two events. *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012). Under a Section 1981 claim of retaliation, the Plaintiff must show that "the employer's retaliatory motive was the 'but for' cause of the adverse employment decision." *Hutchins v. A.G. Edwards & Sons, Inc.*, 978 F. Supp. 885, 891 (E.D. Mo. 1997). "[I]f the plaintiff can establish a *prima facie* retaliation case, the Defendant must provide a legitimate, nondiscriminatory reason for its decision." *Id.* "If the Defendant does so, the burden then shifts back to the plaintiff to show that the proffered reason was merely a pretext for discrimination." *Id.*

Here, Frierson failed to establish a prima facie case of retaliation. Specifically, Frierson failed to establish a causal connection between her complaint and her termination. Fifteen months elapsed from Frierson's complaint in February 2010 until she was terminated in May 2011. The absence of a temporal connection defeats Frierson's claim. *See Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) (four month gap "weakens" inference of retaliation in adverse employment action). Frierson fails to establish that "but for" her complaint she would not have been terminated.

Further, assuming *arguendo* that Frierson could establish a prima facie case, SBC articulated a legitimate, non-discriminatory reason for terminating Frierson's employment. The undisputed facts show that there was a surplus in Oliver's business section and that Oliver decided to eliminate one of the two field service manager positions in Kansas City because multiple technicians had left, revenue was down, and productivity was down.

9

Oliver terminated Frierson's after ranking Oswald better than Frierson in performance, leadership, and skills. Frierson acknowledges that Oswald had better technical skills due to her engineering background. Finally, although Frierson received the top rating on her 2009 end-of-year evaluation, her 2010 mid-year review was lower than Oswald's. "An employer may choose to rely on recent performance more heavily than past performance." *Erickson v. Farmland Industries, Inc.*, 271 F.3d 718, 729 (8th Cir. 2001).

SBC proffered a non-retaliatory reason for Frierson's termination. Frierson offered nothing to counter that reason. Frierson disbelieves SBC's statements but offers no evidence to support her position. Frierson makes several arguments—that Oliver took away her resources and set her up to fail, and technicians were removed from her crew, leaving her with a "skeleton crew." "[A]llegations are insufficient to defeat [a] properly supported motion for summary judgment; a non-movant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (internal quotation marks omitted). "[A] non-movant cannot simply rely on assertions in the pleadings to survive a motion for summary judgment." *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir. 2003). No reasonable jury could find that Frierson's complaint about Kinder played any role in her termination. Accordingly, summary judgment in favor of SBC on Count II of Frierson's Amended Complaint is appropriate.

## IV. CONCLUSION

Defendant SBC's Motion for Summary Judgment is granted in its entirety.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 4, 2013      UNITED STATES DISTRICT COURT